

**U.S. Department of Justice**

Criminal Division

*Computer Crime & Intellectual Property Section*
*1301 New York Ave., Suite 600*
*Washington, D.C. 20530*
*PHONE: (202) 514-1026*
*FAX: (202) 514-6113*

October 7, 2013

The Honorable John Gleeson
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

      Re:  United States v. Sanjay Anandani
           Criminal Docket No. 11-CR-763 (JG)

Dear Judge Gleeson:

    The following letter is submitted in response to the Court's directive to the government, dated September 10, 2013, "to educate the Court on the immigration consequences of the sentence imposed on Anandani, whether a modification of his sentence would ameliorate those consequences, and if so, whether the government objects to such a modification of Anandani's sentence."

    Although the Court has directed the government to educate it regarding the immigration consequences for Sanjay Anandani, as the government noted previously during Anandani's plea colloquy, and must now reiterate: the most significant decisions related to Anandani's immigration status, including whether to initiate removal proceedings or to order removal, are outside the purview and control of either the undersigned attorney, the United States Attorney's Office, or the Criminal Division of the Department of Justice (collectively, "the Prosecution").  Such decisions would instead be made the Department of Homeland Security ("DHS"), Immigration Judges, the Board of Immigration Appeals, and ultimately, the Federal Courts.

    Although the immigration consequences Anandani ultimately will face are outside the Prosecution's control, in an effort to comply with the Court's directive, the following letter identifies, based on consultations with Department of Justice

attorneys versed in immigration law, the likely or potential immigration consequences that Anandani may face, including those resulting from his conviction and sentence.

Anandani's Plea and Sentencing

Sanjay Anandani entered a plea of guilty on April 27, 2012 to one count of violating 18 U.S.C. § 2320 (trafficking in counterfeit goods). Anandani pled pursuant to a cooperation agreement, which expressly stated that pleading guilty to the § 2320 charge could have serious immigration consequences, including removal, and that because of the charge to which Anandani was pleading guilty, removal was presumptively mandatory. See Cooperation Agreement, ¶¶ 1(g), 18. The Court also noted possible immigration-related consequences during the plea colloquy. Having acknowledged his understanding of potential serious immigration consequences flowing from his plea, Anandani nevertheless chose to plead guilty.

On August 7, 2013, the Court sentenced Anandani to 18 months imprisonment (as well as a $10,000 fine, 3 years supervised release, and a $100 special assessment). The Presentence Report recommended an offense level of 21 (based on, among other factors, an infringement amount conservatively estimated at $451,255), resulting in an advisory range of imprisonment of 37 to 46 months under the Guidelines. In light of Anandani's assistance to the government's investigation, the government moved for a downward departure pursuant to § 5K1.1. Ultimately, the Court imposed a sentence of 18 months, or less than half of the low end of the Guidelines range.

Anandani Faces Multiple Grounds for Removal

Although Anandani may face a number of potential adverse immigration consequences based on his conviction and sentence, the most immediate and serious of those consequences would be removal from the United States. Based on information received thus far from DHS, and guidance received from immigration law experts with the Department of Justice, there appear to be at least three separate grounds for Anandani's. First, separate and apart from Anandani's conviction or sentence for trademark counterfeiting, he is likely removable because he is "out of status," i.e., he lacks a current, valid visa or other basis for lawfully remaining in the United States. Second, Anandani is likely removable because his offense constituted an "aggravated felony." Third, he is likely also subject to removal because the offense was a "crime involving moral turpitude."

Of these three grounds for removal, only one – Anandani's conviction for an "aggravated felony" – is affected by the length or type of sentence imposed by the Court. Whether Anandani's offense constituted a "crime involving moral turpitude" depends on the specific offense of which Anandani was convicted, not on the sentence imposed by the Court, and Anandani's potential removability based on a lack of current visa or other status bears even less of a relationship to his criminal conviction or the Court's sentence.

1. Lack of Legal Status

According to DHS, Anandani lacks a current visa or other legal status permitting him to remain in the United States. DHS has indicated that Anandani previously held H1B visas, which have expired, and previously applied for adjustment of status (i.e., to be a legal permanent resident), but that his application and appeal were denied. The government has requested from DHS more complete records of Anandani's immigration history, including confirmation of his current status and that no appeals remain pending, but has not yet received these records as of the time of this writing. Based on the information provided by DHS thus far, Anandani appears to lack legal immigration status permitting him to remain in the United States, and is removable on that basis.

2. Conviction for an "Aggravated Felony"

An alien who is convicted of an aggravated felony at any time after admission is removable under 8 U.S.C. § 1227(a)(2)(A)(iii). The term "aggravated felony" includes "an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(R). Courts have generally held that crimes involving trademark counterfeiting, including § 2320, can constitute "aggravated felonies" for immigration purposes. See Yong Wong Park v. Attorney General of U.S., 472 F.3d 66 (3rd Cir. 2006) (holding that violation of 18 U.S.C. § 2320 constitutes "an offense relating to … counterfeiting" and thus an "aggravated felony" pursuant to 8 U.S.C. § 1101(a)(43)(R)); see also Aslam v. Attorney General of U.S., 404 Fed.Appx. 599 (3rd Cir. 2010) (holding that conviction under 18 U.S.C. § 545 for importation of merchandise "contrary to law," based on violation of 18 U.S.C. § 2320, "relates to counterfeiting" and thus constitutes an aggravated felony);

3

Rodriguez-Valencia v. Holder, 652 F.3d 1157 (9th Cir. 2011) (holding that "aggravated felony" extends to convictions under California law for the unauthorized imitation of trademarks); Magasouba v. Mukasey, 543 F.3d 13 (1st Cir. 2008) (upholding determination of Board of Immigration Appeals that conviction for Rhode Island state criminal offense for selling counterfeit goods constituted "aggravated felony" under § 1101(a)(43)(R)).

Although trademark counterfeiting may constitute an aggravated felony, whether a specific § 2320 offense actually does so will depend, in part, on the length of sentence imposed. Under § 1101(a)(43)(R), an offense "related to … counterfeiting" is an aggravated felony if "the term of imprisonment is at least one year." The 18-month sentence the Court imposed on Anandani would likely render his § 2320 conviction an "aggravated felony" for immigration purposes. Were a term of less than one year to be imposed for the same § 2320 crime, the offense would not count as an "aggravated felony" for purposes of § 1101(a)(43)(R).

In addition to removal, an aggravated felony carries other potential immigration consequences as well, such as ineligibility for asylum or most forms of discretionary relief from removal, and ineligiblity for naturalization. See 8 U.S.C. § 1101(f)(8); 8 U.S.C. § 1427(a). Further, an aggravated felon who is deported is permanently barred from readmission to the United States, unless the Attorney General has consented to the alien reapplying for admission. 8 U.S.C. § 1182(a)(9)(A).

### 3. Conviction for a "Crime Involving Moral Turpitude"

An alien convicted of a "crime involving moral turpitude" ("CIMT") is removable when the potential term of imprisonment is one year or longer, and the offense was committed within five years of the alien's admission to the United States. See 8 U.S.C. § 1227(a)(2)(A)(i). A violation of 18 U.S.C. § 2320 would likely be found to involve "moral turpitude" because the offense involves fraud; courts have held § 2320 offenses to involve moral turpitude for immigration purposes. See Dolgosheev v. Attorney General of U.S., 436 Fed.Appx. 91 (3rd Cir. 2011) (upholding finding of BIA that conviction under 18 U.S.C. § 2320 was "crime of moral turpitude"); Matter of Kochlani, 24 I. & N. Dec. 128 (BIA 2007) (holding that a violation of 18 U.S.C. 2320 is a CIMT).

In contrast to an "aggravated felony," which is defined in part based on the actual sentence imposed, the term of

4

imprisonment relevant to a defendant's removability based on a CIMT conviction is the <u>potential</u> maximum sentence for that CIMT, not the actual term the defendant received.  Because the maximum statutory term of imprisonment for Anandani's offense under 18 U.S.C. § 2320 is 10 years, his conviction would constitute a CIMT under 8 U.S.C. § 1227(a)(2)(A)(i), regardless of the length of sentence the Court imposed.

    A CIMT conviction may have other serious immigration consequences, such as rendering an alien ineligible for certain types of relief form removal.  An alien convicted of a CIMT may still seek adjustment of status, but would need to obtain a waiver of ineligibility, requiring a showing of "extreme hardship."  <u>See</u> 8 U.S.C. § 1182(h)(1)(A)-(C).  An alien convicted of a CIMT who attempted to leave and then reenter the U.S. would also likely be inadmissible and removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I).

    Whether Anandani's conviction for a CIMT would render him removable depends on whether Anandani's CIMT was committed within 5 years of his admission to the United States.  8 U.S.C. § 1227(a)(2)(A)(i).  Anandani pled guilty to Count 2 of the Indictment, alleging conduct occurring "on or about October 2, 2009."  Indictment ¶ 3.  Therefore, Anandani's CIMT would likely render him removable if he were admitted to the U.S. in or after October 2004.  According to Anandani's statements to Probation memorialized in the Presentence Report, Anandani entered the U.S. several times on visitor's visas between 1997 and 2003.  Anandani Presentence Report ("PSR") ¶ 38.  The PSR also indicates that Anandani stated he "acquired a visa allowing him to stay permanently in 2004." <u>Id</u>.  However, according to DHS, Anandani has never been granted permanent resident status.  Rather, DHS has indicated that Anandani was issued H1B visas permitting him to remain in the U.S. temporarily, and that later, after his marriage to a U.S. citizen in 2008, Anandani applied for permanent resident status, but that his application was denied.

    As noted above, the government is awaiting more complete records of Anandani's immigration history, including information that would confirm Anandani's entries into the United States after 2004, and his immigration status at the time of those entries.  Based on information previously obtained from DHS and statements by Anandani reflected in the PSR, it appears Anandani was "admitted" to the U.S. for purposes of § 1227 no earlier than 2004.  DHS has also indicated that Anandani has made several trips abroad since 2004.  If Anandani re-entered the

U.S. on an H1B visa during that period, such a reentry would likely constitute an "admission" for purposes of applying the 5-year time limit of § 1227(a)(2)(A)(i).  Based on this information, it appears likely that Anandani's CIMT was committed less than 5 years after his last admission to the U.S., in which case the CIMT conviction would provide another basis for removal, separate from Anandani's conviction and sentence for an "aggravated felony."

Effect of Sentence Modification on Immigration Consequences

The Court has asked "whether a modification of [Anandani's] sentence would ameliorate" the immigration consequences of that sentence.  As noted previously, the decisions of whether to seek or to order removal, or to impose other significant immigration consequences on Anandani, are outside the Prosecution's control.  However, with respect to the immigration issue that appears to be of greatest concern to Anandani, removability, it appears that a modification of Anandani's sentence would affect only one of the three grounds for removability described above: his "aggravated felony" conviction.

Had the Court sentenced Anandani to less than one year imprisonment for violating § 2320, the conviction would not constitute an "aggravated felony" for immigration purposes.  The same result would likely obtain if the Court were to reduce Anandani's term of imprisonment to less than one year.  See, e.g., Matter of Cota-Vargas, 23 I. & N. Dec. 849, 849 (BIA 2005) (trial court's decision to modify an alien's criminal sentence nunc pro tunc entitled to full faith and credit by the Immigration Judges and the Board of Immigration Appeals).  Such a modification could also allow Anandani to avoid some other consequences of an aggravated felony conviction, such as ineligibility for asylum or for naturalization.

However, even if the Court were to modify Anandani's sentence so as not to constitute an "aggravated felony," Anandani would likely still be subject to removal, based both on his conviction for a crime involving moral turpitude and his lack of a valid visa or other legal status.

Government's View

Anandani was convicted of a serious offense, involving importation and distribution of a significant volume of counterfeit perfume.  Based on an infringement amount exceeding $450,000 (which itself was based on a conservative estimate of

6

the retail value of the counterfeit perfume), the Guidelines recommended a sentence range of 37-46 months. As indicated in its 5K1.1 motion, the government believed that a downward departure was warranted based on Anandani's substantial assistance to the government. The government further believes that the 18-month sentence the Court imposed, reflecting a reduction in sentence of more than 50 percent from the advisory Guidelines range, was fair and reasonable in light of both the seriousness of the offense and Anandani's assistance.

Anandani may face serious immigration consequences, including potential removal. The government recognizes that these consequences, particularly removal (should it occur), are significant. Although the Prosecution does not decide whether removal is sought or ordered, neither does it affirmatively support or advocate removal of Anandani. However, it is unclear whether the possibility or even likelihood of removal or other serious immigration consequences warrants any modification of Anandani's sentence. As discussed above, it appears that Anandani would still face the most serious of those consequences, removability, even absent his criminal conviction and sentence. To the extent that immigration consequences may flow from his conviction or sentence (as opposed to his lack of legal immigration status), Anandani was repeatedly informed of the likelihood of such serious immigration consequences (including the fact that removal was presumptively mandatory as a result of conviction for a § 2320 offense) prior to entering his plea. He nevertheless chose to plead guilty. Finally, even if the Court were to reduce Anandani's sentence in order to avoid the consequences of an aggravated felony conviction, he would still likely face similar significant immigration consequences, including the possibility of removal, as a result of his conviction for a CIMT, which a sentence modification would not change.

The government regards the existing 18-month sentence as fair and reasonable, but we leave it to the Court to determine whether a modification of Anandani's sentence is warranted by the possibility of allowing Anandani to avoid the potential adverse consequences of an aggravated felony conviction (even if Anandani would likely still be subject to removal and other serious immigration consequences). If the Court concludes that such a modification is warranted, we urge the Court to limit any modification to the minimum necessary to accomplish it goals, i.e. to maintain the length of Anandani's sentence to the degree possible.

```
                              Respectfully submitted,

                               /S/ Jason N. Gull
                              Jason N. Gull
                              Senior Counsel
                              U.S. Department of Justice
                              (202) 514-3240
```

cc: Patrick Michael Megaro, Esq. (by e-mail)
    Jennifer Fisher, U.S. Probation Officer (by e-mail)